THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARLES RICHARDSON, Defendant-Appellant.

Second District   No. 84—0748

Opinion filed December 30, 1985.

G. Joseph Weller and Michael F. Braun, both of State Appellate Defender's Office, of Elgin, for appellant.

Daniel Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE LINDBERG delivered the opinion of the court:

Defendant, Charles Richardson, appeals from a judgment of the circuit court of Winnebago County finding him guilty of the murder of Donald Parker and sentencing him to a 60-year extended term of imprisonment for that offense. On appeal defendant argues that (1) the prosecutor's use of a peremptory challenge to remove the only black person from the jury denied him his right to a jury drawn from a fair cross-section of the community, (2) three instances of prosecutorial misconduct deprived him of his right to a fair trial, and (3) the imposi-

tion of an extended-term sentence was an abuse of the sentencing court's discretion.

At about 11:15 p.m. on August 27, 1983, a black man entered the Rainbow Tap, bought a can of beer, and left. Later, at about 12:15 a.m. on August 28, two black men armed with handguns entered the bar. The first went up to Douglas Block, an off-duty police officer and son of the bar's owner, in front of the bar. The second, identified by Block as defendant, went behind the bar near the bartender, Donald Parker, where he opened the cash register. During the course of the robbery, the people in the bar were ordered to place their wallets on the bar. The robber near Block went to pick up Block's wallet, which contained Block's badge, and Block grabbed the man's gun. Both Block and Parker struggled with the robbers near them. Block was shot in the chest by the man he was struggling with. Parker grabbed the legs of the man behind the bar, who then shot him in the head. The man who had been struggling with Block shot Parker in the back and the two gunmen then fled.

■ Defendant contends that Assistant State's Attorney Robert Gemignani's use of a peremptory challenge to exclude the only black member of the venire from the jury deprived defendant of his sixth amendment right to be tried by a jury drawn from a fair cross-section of the community. This issue has been rejected by our supreme court. (*People v. Williams* (1983), 97 Ill. 2d 252, 273-80.) Defendant argues that *Williams* should be ·reexamined because five justices of the United States Supreme Court have expressed interest in considering the issue. (*McCray v. New York* (1983), 461 U.S. 961, 962, 77 L. Ed. 2d 1322, 1323, 103 S. Ct. 2438, 2439 (opinions of Justice Stevens respecting the denial of *certiorari* and Justice Marshall dissenting from the denial of *certiorari*).) However, in cases decided since *McCray* our supreme court has not indicated that it is willing to reconsider *Williams*. (See, *e.g., People v. Lyles* (1985), 106 Ill. 2d 373, 392-96.) Defendant cites decisions from other jurisdictions, including lower Federal courts, in support of his argument; however, none of these decisions is binding on the courts of this State. (*People v. Nurse* (1985), 131 Ill. App. 3d 590, 594, 475 N.E.2d 1000, 1004.) Because the Illinois Supreme Court has decided the issue raised against defendant's position, this court lacks the power to decide that issue in defendant's favor. 131 Ill. App. 3d 590, 594, 475 N.E.2d 1000, 1004.

■ Defendant's second issue concerns three instances of alleged prosecutorial misconduct. Officer James Rinaldo of the Rockford police department had testified that when he arrested defendant, defendant was found crouched down on the floor in the back of the

car. Defendant testified that he was not hiding at the time he was arrested. During cross-examination, the prosecutor added:

"Q [Assistant State's Attorney Gemignani]: Are you saying Rinaldo is lying about that?

A [defendant]: Yes."

The second instance occurred when Mr. Gemignani, during closing argument, commented:

"And if you have time to alter your car and if you're that sophisticated in your actions in this kind of activity, then you are sophisticated enough to change clothes if he did have such clothes on."

Defendant argues that this comment improperly insinuated defendant had a criminal history. Finally, the third instance, also during closing argument, was a comment by Mr. Gemignani that if Officer Dominic Iasparro, who testified to a statement made by defendant after arrest, was lying, "You are all in serious trouble as I am, the Court and everything else. If our police is [sic] that bad, then we are in serious, serious trouble." Defendant argues that this was an improper comment that the witness was more credible because he was a police officer.

■ The three alleged instances of prosecutorial misconduct were neither objected to when they occurred nor alleged in defendant's post-trial motion. Accordingly, they have been waived for purpose of review. (*People v. Pickett* (1973), 54 Ill. 2d 280, 282; *People v. French* (1965), 33 Ill. 2d 146, 149; *People v. Conrad* (1967), 81 Ill. App. 2d 34, 49-50, 225 N.E.2d 713, 721.) Defendant argues that the issue raised should be reviewed as plain error. (87 Ill. 2d R. 615(a).) That rule permits a reviewing court, as a matter of grace in a criminal case, to take notice of unpreserved errors which deprived a defendant of substantial means of enjoying a fair and impartial trial or to consider unpreserved errors in cases in which the evidence is closely balanced. *People v. Pickett* (1973), 54 Ill. 2d 280, 283.

■ The claimed errors did not deprive defendant of substantial means of enjoying a fair and impartial trial. The question of defendant as to whether he believed Officer Rinaldo was lying was improper, but not sufficiently grave to merit a new trial. (*People v. Cohen* (1980), 83 Ill. App. 3d 706, 708, 404 N.E.2d 976, 977.) Defendant's claim that the prosecutor insinuated he had a criminal history is fairly subtle since, in the context in which the prosecutor used the word "sophisticated," it may or may not have been understood to refer to "criminal sophistication." Finally, although it appears the prosecutor did improperly argue Officer Iasparro was more credible because he

was a police officer (*People v. Ford* (1983), 113 Ill. App. 3d 659, 662, 447 N.E.2d 564, 567), this error was not one which denied defendant substantial means of enjoying a fair and impartial trial.

Moreover, the evidence in the case was not closely balanced. The jury heard evidence that Officer Douglas Black identified defendant, both from a photograph and corporeal lineup, out-of-court and had made an in-court identification of defendant as one of the men in the bar who shot the victim, Donald Parker. Another person in the tavern, James Beer, could not make an in-court, but did make from a corporeal lineup an out-of-court, identification of defendant as one of the two men. This was substantial evidence of defendant's guilt as a principal. Also, there was evidence defendant made a statement after arrest admitting he aided in commission of the offense when he, knowing Eugene Flint planned to rob someplace, went into the tavern at Flint's direction, bought a beer, and looked to see who was there so he could tell Flint. Subsequently, according to this statement, Flint and LaVertis Stewart went in and robbed the bar. This was, if the jury chose to believe it, strong evidence of defendant's guilt under an accountability theory and was also impeaching of defendant's testimony at trial that he did not know Flint and Stewart were going to commit a robbery. In addition, the testimony by Officer Rinaldo that defendant ducked down in the back seat of the car at the time he was arrested, and evidence defendant left the State right after the offense, permitted an inference, under either the theory defendant was a principal or the theory he was accountable for the acts of another, that defendant was conscious of his guilt of the offense. The evidence thus cannot be characterized as closely balanced.

■ Defendant's final argument is that the trial court improperly sentenced him as a principal when the jury was instructed on, and could have found him guilty on the basis of, accountability. As defendant points out, the trial court made it clear that it could make a difference at sentencing whether defendant was guilty as a principal or as a person accountable for the acts of others and that defendant was sentenced as a principal. However, as previously noted, the instructions and the evidence permitted the jury to find defendant guilty either as a principal or as a person accountable for the acts of others. The verdict forms did not separate the theories so it is impossible to determine what the jury's conclusion was. On the basis of the facts before him we do not believe the trial judge, who heard all of the testimony and so was in a favorable position to determine the facts, erred in concluding defendant had been a principal.

In his reply brief defendant has brought our attention to events

which have occurred subsequent to his conviction and the filing of his initial brief. Two individuals have been convicted of the same offense as defendant and have appeals pending in this court. (*People v. Flint,* No. 85—80; *People v. Stewart,* No. 85—427.) An examination of those records reveals that Eugene Flint was convicted of essentially the same evidence as defendant as the second principal in the bar. The evidence in LaVertis Stewart's case was substantially different. It appears Stewart was convicted on the basis of statements he made to the effect that he and Flint were the principals and defendant had been an accomplice who had cased the tavern prior to the robbery. This is troubling, because it appears that three individuals have been sentenced as principals for an offense all agree involved only two principals, and the trial judge indicated that the sentence imposed could be affected by whether defendant was a principal or an accessory.

The sentencing judge could not possibly have known of the evidence which would later be adduced at Stewart's trial when he sentenced defendant, so it cannot be said that he erred in sentencing defendant. However, there is a great potential for injustice in this case since, if the sentence is affirmed, it may be that defendant will be unable to obtain sentencing relief to which he may be entitled. We believe that the interests of justice and judicial economy would best be served by remanding this case. The trial judge, who is the only person who can actually know what difference, if any, his knowledge of the evidence in Stewart's case might have made, can resentence defendant to a term of imprisonment appropriate in light of the subsequent events with respect to the homicide at bar. See *Hazdra Homes, Inc. v. County of Du Page* (1975), 27 Ill. App. 3d 685, 687-88, 326 N.E.2d 561, 563 (appellate court took judicial notice of another law suit involving property which was subject of case on appeal in order to avoid unjust or absurd result).

The judgment of the circuit court of Winnebago County is affirmed and the cause is remanded for resentencing.

Affirmed and remanded.

SCHNAKE and STROUSE, JJ., concur.