# ILLINOIS OFFICIAL REPORTS

## Supreme Court

### *People v. Adams*, 2012 IL 111168

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ROMNEY ADAMS, Appellee. |
| Docket No. | 111168 |
| Filed | January 20, 2012 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where no evidence was introduced that these consequences would occur, it was improper to argue to the jury that a police officer's testimony should be believed because he would not risk his credibility, job and freedom by lying; and, where not plain error, nevertheless such comments could not be condoned and should be avoided. |
| Decision Under Review | Appeal from the Appellate Court for the Third District; heard in that court on appeal from the Circuit Court of Will County, the Hon. Carla Alessio Policandriotes, Judge, presiding. |
| Judgment | Appellate court judgment reversed; circuit court judgment affirmed. |

Counsel on Appeal

Lisa Madigan, Attorney General, of Springfield, and James W. Glasgow, State's Attorney, of Joliet (Michael A. Scodro, Solicitor General, and Michael M. Glick and David A. Simpson, Assistant Attorneys General, of Chicago, and Patrick Delfino, Terry A. Mertel and Thomas D. Arado, of the Office of the State's Attorneys Appellate Prosecutor, of Ottawa, of counsel), for the People.

Michael J. Pelletier, State Appellate Defender, Peter A. Carusona, Deputy Defender, and Bryon S. Kohut, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellee.

Justices

JUSTICE BURKE delivered the judgment of the court, with opinion.

Chief Justice Kilbride and Justices Freeman, Thomas, Garman, Karmeier, and Theis concurred in the judgment and opinion.

## OPINION

¶ 1      The primary issue in this appeal is whether a prosecutor may properly argue to a jury that a police officer's testimony should be believed because he would not risk "his credibility, his job, and his freedom" by lying, when no evidence that those consequences would occur was introduced at trial. The appellate court held that such argument was improper and, under the facts of this case, constituted plain error. 403 Ill. App. 3d 995. We agree with the appellate court that the prosecutor's argument was improper but disagree with the court's conclusion that the argument amounted to plain error.

¶ 2                                    Background

¶ 3      The defendant, Romney Adams, was indicted in the circuit court of Will County for unlawful possession of a controlled substance. At defendant's jury trial, Sergeant Joe Boers of the Will County sheriff's police testified for the State. Boers told the jury that on the evening of March 3, 2006, he was on patrol in his police car with Officer Hillary Buck of the New Lenox police department and Deputy Kevin Schumacher of the Will County Forest Preserve police when he observed a tan Oldsmobile sitting in a liquor store parking lot. Boers entered the car's license plate number into a police computer and learned that the registered owner was defendant and that his driver's license had been suspended.

¶ 4      Boers testified that he followed the Oldsmobile into the parking lot of a grocery store across the street, switched on his emergency lights and initiated a traffic stop. Boers approached defendant, who was the only occupant of the vehicle, confirmed his identification, and had him exit the car. Boers then handcuffed defendant and placed him under arrest for driving with a suspended license.

¶ 5     Boers told the jury that while conducting a search of defendant incident to the arrest, he found a small plastic sandwich bag containing a white powdery substance in defendant's left front pocket. Boers ran a preliminary field test on the substance, which indicated the presence of cocaine. Boers stated that, after returning to the police station, he turned the plastic bag and its contents over to a crime scene investigator. Boers testified that he never saw the plastic bag, or any other item, on the ground during the stop of defendant.

¶ 6     Cynthia Koulis, a forensic scientist with the Illinois State Police, also testified for the State. Koulis stated that the white powder in the bag recovered by Boers was 0.8 grams of cocaine.

¶ 7     Defendant testified on his own behalf. Defendant told the jury that he went to the liquor store to buy a lottery ticket and then drove across the street to buy some ice and water. After he got out of his car, a police car pulled up, and officers Boers, Buck and Schumacher approached him. Defendant stated that, when Boers asked defendant for his driver's license, he pulled out two traffic citations from his shirt pocket and began to explain that he had been told that he could drive on the citations. According to defendant, Boers then stated that "you can't drive on a citation in the State of Illinois" and placed defendant under arrest. Boers walked defendant to the rear of the police car and told him to place his hands behind his back, but did not handcuff him. Defendant stated that Boers and Officer Buck then began to search him.

¶ 8     Defendant testified as to what happened next:

"[Boers said] what is this, and I looked toward him and she [Buck] looked toward him too. I said, what? He moved his foot, looked down on the ground. There was a piece of plastic laying there with a white substance in it. It wasn't sealed or tied up or nothing. It was just a piece of plastic. So I said, I don't know. He said, you're not going to say I dropped it. I said, you know I didn't drop it.

[Defense counsel:] Why did you say that?

[Defendant:] Because my hands was behind my back.

[Defense counsel:] Had you seen this piece of plastic before?

[Defendant:] No. I never seen it before."

¶ 9     Later, on cross-examination, defendant provided additional description of the item on the ground:

"It didn't look like a bag to me. It looked like a flat piece of paper with something white.

***

It wasn't knotted up or tied up or nothing. It was laying flat on the ground.

[Prosecutor:] Okay.

[Defendant:] I don't know how it could have been in anyone's pocket."

Defendant testified that he never saw an officer drop or place anything on the ground and that the first time he saw the piece of paper or plastic was when Boers pointed to it with his foot.

¶ 10    Defendant stated that after the officers finished searching him, he was placed in the back

of the police car. Boers sat in the front seat. According to defendant, Boers asked defendant whether he knew any drug dealers or had "any information on any killings or guns," and told defendant that if he could not provide him with information he "would be looking at up to a couple years in prison." Defendant told Boers that he did not know anything.

¶ 11     Defendant further testified that, after being taken to the Will County jail, a booking officer "tried to trick [him] into signing papers saying [he] had over 30 grams of heroin in [his] possession." According to defendant, he refused to sign the papers.

¶ 12     Deputy Schumacher testified in rebuttal for the State. Schumacher corroborated the main points of Boers' testimony, telling the jury that he saw Boers pull the bag of cocaine out of defendant's pocket and that Boers never dropped or retrieved anything from the ground.

¶ 13     The jury found defendant guilty. The trial court denied defendant's posttrial motion and sentenced defendant to five years' imprisonment.

¶ 14     On appeal, defendant contended for the first time that the prosecutor engaged in misconduct when he argued to the jury that Boers and Schumacher would not risk their credibility, reputations, jobs, and freedom by lying on the witness stand, when no evidence that such repercussions would occur was introduced at trial. After acknowledging a split of authority among the appellate districts on the issue, the appellate court concluded that the prosecutor's statements were improper. The court then went on to hold that, because the evidence in this case was closely balanced, the prosecutor's statements amounted to plain error. 403 Ill. App. 3d 995. This appeal followed. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010).

¶ 15                                                    Analysis

¶ 16     During closing argument, the prosecutor made the following statements to the jury:

> "What also doesn't make sense is that [Sergeant] Boers would plant these drugs on the defendant. We are talking about 0.8 grams of cocaine. If you believe what the defendant is saying, then you also have to believe that [Sergeant] Boers is risking his credibility, his job, and his freedom over 0.8 grams of cocaine.
>
> And not only is [Sergeant] Boers doing that, but [Deputy] Schumacher is doing that as well. He's also risking his life–his job and his freedom and his reputation over 0.8 grams of cocaine."

The prosecutor also argued during rebuttal that believing defendant required the jury to believe that "these officers are risking their jobs for this, over 0.8 grams of cocaine."

¶ 17     Noting that it is improper for a prosecutor to argue assumptions or facts not based upon evidence in the case (see, *e.g.*, *People v. Smith*, 141 Ill. 2d 40, 60 (1990)), defendant maintains that these statements were improper because there was no evidence presented at trial regarding potential consequences to the officers if they testified falsely or manipulated evidence. Defendant acknowledges that this claim was not preserved below but asks this court to review the matter for plain error.

¶ 18     In response, the State contends that the prosecutor's statements were not improper. The State observes that a prosecutor is free to "comment on the evidence and any fair, reasonable inferences it yields" (*People v. Nicholas*, 218 Ill. 2d 104, 121 (2005)), and maintains that the

prosecutor's statements in this case "rested on reasonable, common-sense inferences." Thus, according to the State, the appellate court erred in reversing defendant's conviction.

¶ 19 Whether a prosecutor may properly make the statements at issue here has divided our appellate court. Compare, *e.g.*, *People v. Fields*, 258 Ill. App. 3d 912, 920-21 (1994) (improper), with *People v. Bennett*, 304 Ill. App. 3d 69, 71-72 (1999) (proper). However, the weight of authority in other jurisdictions, particularly in the federal courts, holds that such comments are improper. See, *e.g.*, *United States v. Pungitore*, 910 F.2d 1084, 1125 (3d Cir. 1990); *United States v. Gallardo-Trapero*, 185 F.3d 307, 319 (5th Cir. 1999); *United States v. Martinez*, 981 F.2d 867, 871 (6th Cir. 1992); *United States v. Swiatek*, 819 F.2d 721, 731 (7th Cir. 1987); *United States v. McMath*, 559 F.3d 657, 668 (7th Cir. 2009); *United States v. Weatherspoon*, 410 F.3d 1142, 1146 (9th Cir. 2005); *United States v. Boyd*, 54 F.3d 868, 870 (D.C. Cir. 1995); see also, *e.g.*, *State v. Mussey*, 893 A.2d 701, 705 (N.H. 2006); *Spain v. State*, 872 A.2d 25, 31 (Md. 2005); *City of Williston v. Hegstad*, 562 N.W.2d 91, 94-95 (N.D. 1997).

¶ 20 We agree with the majority view. The prosecutor's comments in this case were impermissible speculation, as no evidence was introduced at trial from which it could be inferred that the testifying officers would risk their careers if they testified falsely. See, *e.g.*, *Gallardo-Trapero*, 185 F.3d at 320 (prosecutor's argument that agents would not lie because it would place their careers at risk was improper because it referred to evidence not in the record); *Martinez*, 981 F.2d at 871 (same); *Pungitore*, 910 F.2d at 1125 (holding argument improper where there was "no evidence backing the prosecutor's comments that the U.S. Attorneys and law enforcement officers could not have behaved as unscrupulously as defense counsel alleged they did without violating their oaths of office and jeopardizing their careers"). Further, "[b]y invoking unspecified, but assumed, punitive consequences or sanctions that might result if a police officer testifies falsely, a prosecutor's arguments imply that a police officer has a greater reason to testify truthfully than any other witness with a different type of job" (*Spain*, 872 A.2d at 32), thus violating the principle that "a prosecutor may not argue that a witness is more credible because of his status as a police officer" (*People v. Clark*, 186 Ill. App. 3d 109, 115-16 (1989). See also, *e.g.*, *Weatherspoon*, 410 F.3d at 1146 (comments such as those at issue here constituted improper vouching because they "clearly urged that the existence of legal and professional repercussions served to ensure the credibility of the officers' testimony"). For these reasons, we hold, as did the appellate court below, the prosecutor's remarks were improper.

¶ 21 However, we disagree with the appellate court's further conclusion that the prosecutor's statements amounted to plain error under the facts of this case. The plain-error doctrine permits a court of review to consider error that has been forfeited when either

> "(1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence. In the first instance, the defendant must prove 'prejudicial error.' That is, the defendant must show both that there was plain error and that the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him. The State, of course, can respond by arguing that the evidence was not closely balanced, but rather strongly weighted against the defendant. In the second instance, the defendant must

prove there was plain error and that the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process. [Citation.] Prejudice to the defendant is presumed because of the importance of the right involved, '*regardless* of the strength of the evidence.' (Emphasis in original.) [Citation.] In both instances, the burden of persuasion remains with the defendant." *People v. Herron*, 215 Ill. 2d 167, 187 (2005).

Defendant cannot meet either prong of the plain-error test.

¶ 22    In determining whether the closely balanced prong has been met, we must make a "commonsense assessment" of the evidence (*People v. White*, 2011 IL 109689, ¶ 139) within the context of the circumstances of the individual case. In this case, defendant testified that he was already out of his car when the police arrived but that he did not see any of the officers place anything on the ground. In addition, in explaining why the cocaine could not have been recovered from him, defendant stated that it could not "have been in anyone's pocket" because it was lying on a flat piece of paper or plastic that "did not look like a bag." Thus, the jury heard from defendant the following version of events: A piece of paper or plastic with cocaine on it was sitting in a parking lot. Although unsecured in any way, the cocaine powder had not been disturbed by wind, weather or traffic. By coincidence, defendant parked his car next to the cocaine. In a further coincidence, after defendant was approached by the police, he was escorted to and searched in a spot only inches from the cocaine. Then, when Boers discovered the cocaine on the ground, he conspired on the spot to attribute the drugs to defendant in an apparent attempt to pressure defendant to provide information about other crimes, though there was no indication that the police had ever met defendant or would have reason to believe that he possessed such information. We think it clear from the foregoing that defendant's explanation of events, though not logically impossible, was highly improbable.

¶ 23    Further, the jury was properly instructed that counsel's arguments were not evidence and that only they were the "judges of the believability of the witnesses." In addition, the prosecutor's comments, though improper, were not of a sort likely to inflame the passions of the jury. Given these circumstances, we cannot conclude that the prosecutor's erroneous statements "severely threatened to tip the scales of justice against" defendant (*Herron*, 215 Ill. 2d at 187), so as to satisfy the closely balanced prong of plain-error review.[1]

¶ 24    Nor do the prosecutor's comments amount to plain error under the fundamental fairness prong. To meet that test, the error must be "so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *Herron*, 215 Ill. 2d at 187. The error here does not rise to that level. In so holding, we emphasize that we do not condone the prosecutor's comments. Although they do not amount to plain error, the comments were improper and are to be avoided in the future.

---

[1]The State asks that, in the event this court should hold that defendant has satisfied the closely balanced prong of plain-error review, we abandon that aspect of plain-error review in cases alleging prosecutorial misconduct during closing argument. Because we hold that defendant has not satisfied the closely balanced prong, we do not reach this issue.

¶ 25 Defendant also contends that the prosecutor improperly stated during closing argument that Boers "locked himself in" to his testimony when he wrote his police report shortly after stopping defendant, even though the contents of the report were not discussed at trial; and that the prosecutor improperly bolstered the testimony of Boers and Schumacher when he stated that he could have presented the testimony of other officers at defendant's traffic stop who would have corroborated Boers' and Schumacher's testimony, even though there was no evidence at trial regarding what these other officers would have said. Defendant acknowledges that no objection was made to these comments in the trial court but again asks us to review the comments for plain error.

¶ 26 The State, in response, concedes that the prosecutor erred in referring to the contents of the police report and the potential testimony of other officers, but maintains that no plain error occurred. We agree. For the reasons discussed above with respect to defendant's first claim of error, we hold that the prosecutor's comments regarding the police report and other potential testimony do not constitute plain error.

¶ 27 Finally, defendant contends that the following statements made by the prosecutor during closing argument were improper:

> "What this case is going to come down to, ladies and gentlemen, is credibility. Who do you believe? Do you believe the eight and a half year veteran of the Will County Sheriff's Department, the five year veteran of the forest preserve police, or do you believe the defendant who had almost two and a half years to come up with the story he told you today."

In rebuttal, the prosecutor repeated this theme:

> "The only reason I called Deputy Schumacher is because the defendant took the stand and he gave you a cockamamie story about what he said went down, a story he created two and a half years later, that he had two and a half years to come up with, that if you look at and you say, is this reasonable, that's not reasonable."

Defendant contends that, in stating that defendant "had two and a half years to come up with" a story, the prosecutor was "implicitly" attacking defendant's postarrest silence, in violation of *Doyle v. Ohio*, 426 U.S. 610 (1976). We disagree.

¶ 28 In *Doyle*, the United States Supreme Court held that, after a defendant has received his *Miranda* warnings, it is a due process violation for a prosecutor to comment on a defendant's postarrest silence at trial for the purpose of impeaching the defendant's testimony. That did not occur here. In this case, when the prosecutor made the comment about how defendant "had time to think about and plan [his] testimony, he was merely assailing [defendant's] credibility." *State v. Mendoza*, 262 P.3d 266, 270 (Idaho 2011). As one court has explained:

> "The prosecutor did not use petitioner's earlier silence to suggest that his exculpatory testimony was untrue; instead, he commented on petitioner's credibility as a witness by alluding to petitioner's opportunity to perfect his account. As the Supreme Court noted in *Portuondo v. Agard*, 529 U.S. 61, 68 (2000):
>
>> Allowing comment upon the fact that a defendant's presence in the courtroom provides him a unique opportunity to tailor his testimony is appropriate ... to the central function of the trial, which is to discover the truth.

The prosecutor's comment in this case was more like that in *Portuondo* than in *Doyle*; there was no error." *Melendez v. Scribner*, No. CIV S-03-1593, 2006 WL 2520301, at *12 (E.D. Cal. Aug. 30, 2006).

¶ 29　　We agree with this reasoning and hold that the prosecutor did not err when he stated that defendant "had two and a half years to come up" with his story. See also, *e.g.*, *Tri Dung Nguyen v. Felker*, No. C 07-2479, 2009 WL 1246693 (N.D. Cal. May 5, 2009).

¶ 30　　　　　　　　　　　　　　　　Conclusion

¶ 31　　For the foregoing reasons, the judgment of the appellate court is reversed. The judgment of the circuit court is affirmed.

¶ 32　　Appellate court judgment reversed;

¶ 33　　circuit court judgment affirmed.